Robert C. Schubert (S.B.N. 62684)
(rschubert@sjk.law)
Willem F. Jonckheer (S.B.N. 178748)
(wjonckheer@sjk.law)
Dustin L. Schubert (S.B.N. 254876)
(dschubert@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union. St., Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220
Facsimile: (415) 788-0161

*Counsel for Plaintiffs Damon Wells and Jennifer Konikowski*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO / OAKLAND DIVISION**

DAMON WELLS and JENNIFER KONIKOWSKI, Derivatively on Behalf of STITCH FIX, INC.,

Plaintiffs,

v.

KATRINA LAKE, ELIZABETH SPAULDING, J. WILLIAM GURLEY, SHARON MCCOLLAM, ELIZABETH WILLIAMS, STEVEN P. ANDERSON, NEAL MOHAN, MIKKEL SVANE, MICHAEL SMITH, KIRSTEN LYNCH, and MARKA HANSEN,

Defendants,

- and -

STITCH FIX, INC.,

Nominal Defendant.

Case No. 3:25-cv-09732

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Plaintiffs Damon Wells and Jennifer Konikowski (together, "Plaintiffs"), by and through their undersigned counsel, bring this action derivatively on behalf of nominal defendant Stitch Fix, Inc. ("Stitch Fix" or the "Company") against certain of its current and former officers and directors for breaches of fiduciary duty, unjust enrichment, and violations of the federal securities laws. The allegations below are made upon personal knowledge as to Plaintiffs and their own acts, and upon information and belief as to all other matters based on a review of: (a) information publicly disseminated by Stitch Fix, including its public filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, investor conference transcripts, and postings on its website; (b) news reports and other publicly available sources; and (c) court dockets, filings, and orders in pending or related litigation involving Stitch Fix. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1. This is a shareholder derivative action on behalf of Nominal Defendant Stitch Fix asserting claims for breaches of fiduciary duty, insider trading, unjust enrichment, and violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder against certain current and former officers and directors of the Company for their alleged wrongful conduct between at least June 9, 2020 and June 9, 2022.

2. Stitch Fix is an online personal styling and apparel company that historically (and during the relevant period) derived the majority of its revenue from its core "Fix" subscription service. In this flagship business, customers complete a personal style profile, pay a recurring styling fee, receive periodic clothing shipments curated by the Company's stylists, and then purchase what they wish to keep and return the rest. The Fix model depended on high client engagement, repeat purchases, and customer retention—critical drivers of the Company's financial performance.

3. This case arises because the Individual Defendants (defined *infra*) breached their fiduciary duties and committed other alleged wrongdoing by causing the Company to issue false and misleading statements about a major strategic initiative: the launch and expansion of its "Direct Buy" or "Freestyle" business, which allowed customers to purchase specific items outside of Fix subscription plans. Rather than candidly disclosing the material risks that Freestyle posed to the Fix

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

model, the Individual Defendants downplayed or outright dismissed concerns that Freestyle's direct-buy service posed a threat to existing operations. Instead, the Individual Defendants misrepresented that Freestyle would be "complementary," "additive," and "incremental." Yet, during the relevant period, the Individual Defendants knew from internal Stitch Fix testing (including "New Fix Customer Tests") and other Company data that: (i) Freestyle was cannibalizing the Company's key Fix legacy business, (ii) new clients funneled to Freestyle converted at rates 30-40% lower than traditional Fix clients, spent less, and were less likely to return, and (iii) Freestyle undermined long-term customer value.

4. Through these actions, the Individual Defendants failed in their most fundamental fiduciary responsibility of acting in the best interests of the Company and its stockholders by providing accurate information to the market and avoiding foreseeable harm to Stitch Fix. Investors learned the truth in a series of partial disclosures beginning in March 2021. The final blow came in June 2022, when the Company revealed that Freestyle's rollout had indeed hurt the Fix business, announced significant layoffs, and revised its guidance downward. The shocking announcements on June 9, 2022 sent Stitch Fix's stock price plummeting 27%. Afterward, in January 2023, the Company engaged in an "ambitious transformation," effectively abandoned Freestyle as a customer acquisition strategy, and forced out its then-Chief Executive Officer ("CEO") Elizabeth Spaulding.

5. This wrongful conduct has damaged the Company and subjected it to costly litigation. On August 26, 2022, investors seeking to recoup their losses in Stitch Fix stock sued the Company and certain of its officers, directors, and controlling shareholders for violations of the federal securities laws in this District, in a case captioned *Retail Wholesale Dep't Store Union Loc. 33 Ret. Fund, et al. v. Stitch Fix, Inc., et al.* Case No. 5:22-cv-04893-PCP (N.D. Cal.) (the "Securities Class Action"). In addition to the Company, the operative Securities Class Action complaint names as defendants Katrina Lake and Elizabeth Spaulding, who each served as Stitch Fix's Chief Executive Officer ("CEO") during portions of the relevant period. By Order dated July 9, 2025, U.S. District Judge P. Casey Pitts denied in part the motions to dismiss the Securities Class Action, holding that investors stated actionable claims against the defendants under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 and that the complaint adequately alleged facts

showing the defendants acted with a "strong inference of scienter"—or intent to defraud. The Securities Class Action has exposed the Company to massive liability for securities fraud.

6. The Individual Defendants further breached their fiduciary duties by causing Stitch Fix to repurchase its own stock at prices that were artificially inflated due to the misrepresentations described herein. Between January 2022 and April 2022, the Company repurchased approximately 2.3 million shares of Stitch Fix stock, costing approximately $30 million. As the Company's stock was actually worth only $6.34 per share (*i.e.*, the price it was trading at when markets closed on June 10, 2022 following the full truth being revealed), the Company overpaid for its repurchased stock by almost $15.4 million in total.

7. Shareholder value has also been severely damaged by the Individual Defendants' misconduct and other wrongdoing, including their breaches of the fiduciary duty of care. This shareholder derivative action seeks to recoup losses that Stitch Fix has sustained (and will continue sustaining) in connection therewith.

8. The Company's misrepresentations also enabled Company insiders to line their own pockets. While Stitch Fix's stock traded at artificially inflated prices, the Insider Trading Defendants (defined *infra*) collectively sold over $147 million worth of stock. These sales were made against the backdrop of material nonpublic information regarding the negative results of Stitch Fix's internal testing—information showing that Freestyle was not in fact "additive" or "incremental," but was instead driving away customers who otherwise would have engaged with the Fix service.

9. Additionally, in causing the Company to issue false and misleading statements, exposing the Company to the highly damaging Securities Class Action, and committing the other alleged wrongdoing (or failing to prevent it despite clear warning signs), each Individual Defendant named herein (and a majority of the members of the current Stitch Fix Board of Directors) acted in bad faith and faces a substantial likelihood of liability for breaching their fiduciary duties and violating the federal securities laws. Furthermore, multiple members of Stitch Fix's Board of Directors (the "Board") are not independent or are otherwise conflicted.

10. Under these circumstances, any pre-suit demand on the Board to bring the asserted claims would be futile and is therefore excused, as set forth herein.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under Sections 10(b) and 21D of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

12. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c) and (d) and § 1401. Stitch Fix and the Individual Defendants have conducted business in this District and/or their actions have had an effect in this District, the Company maintains its principal executive offices within this District, and a substantial portion of the wrongs complained of herein occurred in this District. The Court has personal jurisdiction over each defendant because each defendant is either a corporation that conducts sufficient business in this District or an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction permissible under traditional notions of fair play and substantial justice.

14. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

15. Divisional Assignment: This action arises in San Francisco County because a substantial part of the events which give rise to the claims asserted herein occurred in San Francisco County, where Stitch Fix is headquartered and located. Pursuant to L.R. 3-2(d), all civil actions that arise in San Francisco County shall be assigned to the San Francisco Division or Oakland Division.

## PARTIES

### A. Plaintiffs

16. ***Plaintiff Damon Wells*** is, and has been at all relevant times, a shareholder of Stitch Fix, and currently holds 2,000 shares of Stitch Fix stock. Plaintiff Wells will fairly and adequately represent Stitch Fix's interests in this action.

17. ***Plaintiff Jennifer Konikowski*** is, and has been at all relevant times, a shareholder of Stitch Fix, and currently holds 253 shares of Stitch Fix stock. Plaintiff Konikowski will fairly and adequately represent Stitch Fix's interests in this action.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**B. Nominal Defendant**

18. ***Nominal Defendant Stitch Fix, Inc.*** is a Delaware corporation with its principal executive offices located at 1 Montgomery Street, Suite 1500, San Francisco, California 94104. Stitch Fix's common stock trades on the NASDAQ Global Select Market under the ticker symbol "SFIX."

**C. Individual Defendants**

19. ***Defendant Katrina Lake*** is Stitch Fix's founder and served as its CEO from the Company's 2011 inception until August 1, 2021, when she was succeeded by Defendant Spaulding. Following Spaulding's January 2023 departure from the Company, Lake returned as Stitch Fix's Interim CEO from January 5, 2023 to June 26, 2023. Additionally, Lake has served as a Stitch Fix director since 2011 and is the Company's Executive Chairperson. According to the proxy statement Stitch Fix filed with the SEC on October 31, 2025, Lake beneficially owned 8,396,933 shares of Stitch Fix Class A and Class B common stock, equal to approximately 29.22% of the Company's total voting interests. Given that the price per share of Stitch Fix's common stock at the close of trading on October 31, 2025 was $4.19, Lake beneficially owned approximately $35,183,149 worth of Stitch Fix common stock as of that date. Lake is named as a defendant in the Securities Class Action. For fiscal year 2021, Lake received $637,980 in Stitch Fix compensation as salary.

20. ***Defendant Elizabeth Spaulding*** served as Stitch Fix's CEO from August 1, 2021 until January 5, 2023, when she stepped down from the Company in connection with its reduction in force and was succeeded by Defendant Lake. Pursuant to Spaulding's January 2023 separation agreement, Spaulding received twelve months of her Stitch Fix base salary as severance. Prior thereto, Spaulding served as President from January 2020 through August 2021. Throughout the relevant period and until January 2023, Spaulding also served as a Stitch Fix director. According to the proxy statement Stitch Fix filed with the SEC on November 1, 2023, Spaulding beneficially owned 178,741 shares of Stitch Fix common stock. Given that the price per share of Stitch Fix's common stock at the close of trading on November 1, 2023 was $3.16, Spaulding beneficially owned approximately $564,822 worth of Stitch Fix Class A common stock as of that date. Spaulding is named as a defendant in the Securities Class Action. The following chart summarizes Defendant

Spaulding's total reported compensation of $11,953,050 between fiscal years 2021 and 2022, as described in the Company's proxy statements:

| Fiscal Year | Salary | Bonus | Stock Awards | Option Awards | Incentive Comp. | Other Comp. | Total |
|---|---|---|---|---|---|---|---|
| 2021 | $600,720 | N/A | $2,385,659 | $5,566,551 | $265,200 | N/A | $8,818,130 |
| 2022 | $646,674 | $250,000 | $2,224,000 | N/A | N/A | $14,246 | $3,134,920 |

21. ***Defendant J. William Gurley*** has served as a Stitch Fix director since August 2013. During the relevant period, Defendant Gurley served as a member of the Nominating and Corporate Governance Committee and as its Chairperson. The Company's Board determined that Gurley is an "audit committee financial expert" within the meaning of SEC regulations. According to the proxy statement Stitch Fix filed with the SEC on October 31, 2025, Gurley beneficially owned 6,848,820 shares of Stitch Fix Class A and Class B common stock, equal to approximately 14.27% of the Company's total voting interests. Given that the price per share of Stitch Fix's common stock at the close of trading on October 31, 2025 was $4.19, Gurley beneficially owned approximately $28,696,556 worth of Stitch Fix common stock as of that date. Given his affiliation with certain of the Company's stockholders, Gurley did not receive compensation for his service on Stitch Fix's Board of Directors during the relevant period.

22. ***Defendant Sharon McCollam*** has served as a Stitch Fix director since November 2016. During the relevant period, Defendant McCollam served as the Company's Lead Independent Director, as a member of the Audit Committee and as its Chairperson, and as member of the Nominating and Corporate Governance Committee. The Company's Board determined that McCollam is an "audit committee financial expert" within the meaning of SEC regulations. According to the proxy statement Stitch Fix filed with the SEC on October 31, 2025, McCollam beneficially owned 291,062 shares of Stitch Fix Class A and Class B common stock. Given that the price per share of Stitch Fix's common stock at the close of trading on October 31, 2025 was $4.19, McCollum beneficially owned approximately $1,219,550 worth of Stitch Fix common stock as of that date. The following chart summarizes Defendant McCollam's total reported director compensation of $605,409 between 2020 and 2022, as disclosed in the Company's proxy statements:

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2020 | $85,000 | N/A | N/A | $85,000 |
| 2021 | $85,000 | $119,840 | $74,994 | $279,834 |
| 2022 | $85,000 | $74,135 | $81,440 | $240,575 |

23. ***Defendant Elizabeth Williams*** has served as a Stitch Fix director since January 2019. During the relevant period, Defendant Williams served as a member of the Audit Committee and as a member and Chairperson of the Compensation Committee. The Company's Board determined that Williams is an "audit committee financial expert" within the meaning of SEC regulations. According to the proxy statement Stitch Fix filed with the SEC on October 31, 2025, Williams beneficially owned 262,820 shares of Stitch Fix Class A common stock. Given that the price per share of Stitch Fix's common stock at the close of trading on October 31, 2025 was $4.19, Williams beneficially owned approximately $1,101,216 worth of Stitch Fix common stock as of that date. The following chart summarizes Defendant Williams's total reported director compensation of $702,711 between 2020 and 2022, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2020 | $60,000 | 82,305 | 74,997 | $217,302 |
| 2021 | $62,500 | $119,840 | $74,994 | $254,834 |
| 2022 | $75,000 | $74,135 | $81,440 | $230,575 |

24. ***Defendant Steven P. Anderson*** served as a Stitch Fix director from April 2011 until September 6, 2024. During the relevant period, Defendant Anderson served as a member of the Compensation Committee. According to the proxy statement Stitch Fix filed with the SEC on October 31, 2024, Anderson beneficially owned 9,325,566 shares of Stitch Fix Class B common stock. Given that the price per share of Stitch Fix's common stock at the close of trading on October 31, 2024 was $3.16, Anderson beneficially owned approximately $29,468,789 worth of Stitch Fix common stock as of that date. Given his affiliation with certain of the Company's stockholders, Anderson did not receive compensation for his service on Stitch Fix's Board of Directors during the relevant period.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

25. ***Defendant Neal Mohan*** served as a Stitch Fix director from October 2020 until December 15, 2023. During the relevant period, Defendant Mohan served as a member of the Nominating and Corporate Governance Committee. According to the proxy statement Stitch Fix filed with the SEC on November 1, 2023, Mohan beneficially owned 105,029 shares of Stitch Fix Class A common stock. Given that the price per share of Stitch Fix's common stock at the close of trading on November 1, 2023 was $3.16, Mohan beneficially owned approximately $331,892 worth of Stitch Fix common stock as of that date. The following chart summarizes Defendant Mohan's total reported director compensation of $473,760 between 2021 and 2022, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2021 | $42,778 | $133,920 | $86,487 | $263,185 |
| 2022 | $55,000 | $74,135 | $81,440 | $210,575 |

26. ***Defendant Mikkel Svane*** served as a Stitch Fix director from October 2018 until March 20, 2023. At various points during the relevant period, Defendant Svane served as a member of the Audit Committee and the Compensation Committee. According to the proxy statement Stitch Fix filed with the SEC on November 1, 2022, Svane beneficially owned 41,557 shares of Stitch Fix Class A common stock. Given that the price per share of Stitch Fix's common stock at the close of trading on November 1, 2022 was $3.87, Svane beneficially owned approximately $160,826 worth of Stitch Fix common stock as of that date. The following chart summarizes Defendant Svane's total reported director compensation of $687,218 between 2020 and 2022, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2020 | $60,000 | $82,305 | $74,997 | $217,302 |
| 2021 | $60,000 | $119,840 | $74,994 | $254,834 |
| 2022 | $59,507 | $74,135 | $81,440 | $215,082 |

27. ***Defendant Michael Smith*** served as Stitch Fix's interim Chief Financial Officer between January 2020 and January 2021, as its Chief Operating Officer between September 2017 and January 2021, and before that in various other capacities with the Company, including as its General Manager, Stitch Fix Men from March 2016 to September 2017 and as Chief Operating Officer from June 2012 to March 2016. Defendant Smith also served as a Stitch Fix director from October 21, 2020 until December 13, 2022. According to the proxy statement Stitch Fix filed with the SEC on November 1, 2022, Smith beneficially owned 687,022 shares of Stitch Fix Class A and Class B common stock. Given that the price per share of Stitch Fix's common stock at the close of trading on November 1, 2022 was $3.87, Smith beneficially owned approximately $2,658,775 worth of Stitch Fix common stock as of that date. The following chart summarizes Defendant Smith's total reported compensation of $3,307,661 between fiscal years 2020 and 2021, as described in the Company's proxy statements:

| Fiscal Year | Salary | Bonus | Stock Awards | Option Awards | Incentive Comp. | Other Comp. | Total |
|---|---|---|---|---|---|---|---|
| 2020 | $581,530 | N/A | $1,257,795 | $1,049,994 | N/A | N/A | $2,889,319 |
| 2021 | $277,223 | N/A | $70,889 | $70,890 | N/A | N/A | $418,342 |

Additionally, the following chart summarizes Defendant Smith's total reported director compensation of $205,575 for 2022, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2022 | $50,000 | $74,135 | $81,440 | $205,575 |

28. ***Defendant Kirsten Lynch*** served as a Stitch Fix director from March 2018 until May 13, 2022. During the relevant period, Lynch served as a member of the Compensation Committee. According to the proxy statement Stitch Fix filed with the SEC on November 4, 2021, Lynch beneficially owned 36,641 shares of Stitch Fix Class A common stock. Given that the price per share of Stitch Fix's common stock at the close of trading on November 4, 2021 was $35.74, Lynch beneficially owned approximately $1,309,549 worth of Stitch Fix common stock as of that date. The

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

following chart summarizes Defendant Lynch's total reported director compensation of $665,836 between 2020 and 2022, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2020 | $57,500 | $82,305 | $74,997 | $214,802 |
| 2021 | $57,500 | $119,840 | $74,994 | $252,334 |
| 2022 | $43,125 | $74,135 | $81,440 | $198,700 |

29. ***Defendant Marka Hansen*** served as a Stitch Fix director from February 2014 until January 1, 2022. During the relevant period, Defendant Hansen served as a member of the Compensation Committee and as its Chairperson until approximately November 2020. According to the proxy statement Stitch Fix filed with the SEC on November 4, 2021, Hansen beneficially owned 18,375 shares of Stitch Fix Class B common stock. Given that the price per share of Stitch Fix's common stock at the close of trading on November 4, 2021 was $35.74, Hansen beneficially owned approximately $656,723 worth of Stitch Fix common stock as of that date. The following chart summarizes Defendant Hansen's total reported director compensation of $307,658 between 2020 and 2022, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2020 | $65,000 | N/A | N/A | $65,000 |
| 2021 | $65,000 | N/A | N/A | $65,000 |
| 2022 | $22,083 | $74,135 | $81,440 | $177,658 |

30. Together, Defendants Lake, Spaulding, Gurley, McCollam, Williams, Anderson, Mohan, Svane, Smith, Lynch, and Hansen are sometimes collectively referred to herein as the "Individual Defendants."

**FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

31. By reason of their positions as officers, directors, and/or fiduciaries of Stitch Fix, and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owe (and owed) the Company and its stockholders fiduciary obligations of trust, loyalty,

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

good faith, and due care, and are (and were) required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.

32. The Individual Defendants are (and were) required to act in furtherance of the best interests of Stitch Fix and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

33. Each director and officer of the Company owes (and owed) Stitch Fix and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing.

34. In addition, as officers and directors of a publicly held company, the Individual Defendants have (and had) a duty to promptly disseminate accurate and truthful information with regard to the Company's financial and business prospects so that the market price of the Company's stock is based on truthful information.

35. The Individual Defendants, because of their positions of control and authority as directors and officers of Stitch Fix, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

36. The misconduct of the Individual Defendants involves culpable violations of their obligations, the absence of good faith on their part, and a reckless disregard for the fiduciary duties owed to Stitch Fix and its stockholders, which they were aware or should have been aware posed a risk of serious harm to Stitch Fix.

37. At all relevant times, each Individual Defendant was the agent of each other and of Stitch Fix and was acting within the course and scope of such agency.

38. Accordingly, the Individual Defendants were responsible for ensuring that disclosures in the Company's reports and other documents filed with the SEC and statements issued publicly were materially complete and contained no significant misrepresentations or omissions.

39. According to Stitch Fix's SEC filings, the Audit Committee was established "to oversee the Company's corporate accounting and financial reporting processes" and at all relevant times was charged with responsibility to "review the effectiveness of the Company's internal

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

controls over financial reporting, any material issues with such controls, and any steps taken to address such issues." The Audit Committee was also responsible for overseeing the Company's enterprise risk management program, monitoring compliance with legal and regulatory requirements, and considering and discussing major financial risk exposures.

40. The Company's Audit Committee Charter in place during the relevant period further established that the Audit Committee's "primary purpose" included acting on behalf of the Board in fulfilling its responsibilities for overseeing Stitch Fix's "accounting and financial reporting processes, systems of internal control over financial reporting and audits of financial statements, systems of disclosure controls and procedures, and the quality and integrity of the Company's financial statements and reports," as well as oversight over "the review of any reports or other disclosure required by the applicable rules and regulations" of the SEC to be included in periodic public disclosures. Regarding the Company's financial statements, the Audit Committee was charged with reviewing and discussing annual and quarterly SEC reports filed on Forms 10-K and 10-Q with Stitch Fix management. Under the Charter, Audit Committee members also "review[ed] with management" Stitch Fix's earnings press releases, as well as the substance of financial information therein. The Audit Committee also reviewed with management significant issues that arose "regarding accounting principles and financial statement presentation, including critical accounting policies and practices," "significant regulatory, legal and accounting initiatives or developments," and "compliance programs and policies." Finally, it was also charged with: (i) reviewing and discussing with management the Company's "guidelines and policies with respect to financial risk management and financial risk assessment," including "steps taken by management to monitor and control these exposures," (ii) discussing with management the "scope, adequacy, and effectiveness of internal control over financial reporting," (iii) analyzing the "results of management's efforts to monitor compliance with the Company's programs and policies designed to ensure adherence to applicable laws and rules, as well as to the Company's Code of Conduct," and (iv) reporting to the Board any "material issues that arise regarding the quality or integrity of the Company's financial statements" or its compliance with legal or regulatory requirements.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

41. The Company maintains a Code of Conduct which applies to all Stitch Fix officers, employees, and directors. The Code of Conduct in place during the relevant period proclaimed the Company's "commitment to honest and ethical conduct" and that its purpose was to "ensur[e] that Stitch Fix's people are able to be their best selves while acting lawfully, responsibly, and with integrity." The Code of Conduct established that "[o]beying the law, in letter and in spirit, is the minimum standard." Regarding the Company's public disclosures, the Code of Conduct stated that "[w]e record and report the truth," and that persons involved in the such matters must "strive to ensure that our financial disclosure is accurate and transparent and that our reports contain all of the information about Stitch Fix that would be important to enable stockholders and potential investors to assess the soundness and risk of our business and finances and the quality and integrity of our accounting and disclosures."

42. Additionally, the Company's Corporate Governance Guidelines in place during the relevant period further emphasized that the Board members' "core responsibility" is fulfilling their fiduciary duties owed to the Company and acting in the "best interests of the Company and [its] stockholders." Those duties specifically included responsibilities to "review, approve and monitor fundamental financial and business strategies and major corporate actions," "assess major risks facing the Company and consider ways to address those risks," "oversee management," and "oversee the establishment and maintenance of processes and conditions to maintain the integrity of the Company." To discharge those duties, Stitch Fix directors "must act with integrity" and were expected to "demonstrate a commitment to the Company, [its] values, and [its] business and to long-term stockholder value."

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

43. In committing the wrongful acts alleged herein, the Individual Defendants pursued, or joined in the pursuit of, a common course of conduct, and acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

44. The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct were, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, insider trading, and unjust enrichment.

45. The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

46. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are (and were) directors, officers, and executives of the Company at relevant times, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

47. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

## FACTUAL ALLEGATIONS

### A. Background of Stitch Fix

48. From Stitch Fix's 2011 founding and through its 2017 initial public offering, the Company built its online apparel business around the personalized styling service known as the "Fix." Through this subscription model, customers (sometimes referred to internally as clients) completed a detailed style profile, paid a small styling fee, and periodically received a curated shipment of clothing and accessories selected with the assistance of Stitch Fix's in-house stylists and data-science tools. Customers kept what they liked and returned the rest of the selections. Because this service depended on repeated engagements rather than one-off purchases, the Company's Fix

business was historically driven by strong customer retention and conversions and value generated by the ongoing relationships between customers and their stylists. This subscription-based and curated experience significantly differentiated Stitch Fix from traditional e-commerce retailers and was central to the Company's financial performance and success, accounting for most of the Company's net revenue.

49. Leading up to the relevant period, the Company emphasized that its competitive advantage lay in the combination of human stylists and proprietary algorithms that predicted customer preferences while optimizing inventory selection. Indeed, Stitch Fix repeatedly told investors that these data-driven tools improved the accuracy of stylist recommendations, reduced merchandise returns, and increased customer satisfaction—all of which encouraged purchases and continued customer engagement. The Fix model also provided the Company visibility into client demand patterns, which helped Stitch Fix management forecast purchasing trends, plan inventory, and refine merchandise assortments to support recurring revenue from subscription shipments.

**B. <u>The Development and Public Positioning of Freestyle</u>**

50. However, around 2019, Stitch Fix began exploring ways to expand its reach beyond the curated Fix subscription service by allowing customers to purchase individual items directly from the Company's website or app. These early experiments, later announced in October 2019, allowed existing clients to buy specific products recommended to them outside of a Fix shipment, like items styled to match pieces they previously purchased. The Company claimed these direct-purchase features, offered under names such as "Shop Your Looks" and "Trending for You," were intended to deepen client engagement, increase "wallet share," and capture additional shopping opportunities between regular Fix shipments within the subscription ecosystem (and not as substitutes for Fix itself). Publicly, the Company framed these features as a natural extension of the Fix model and a way to leverage Stitch Fix's personalization algorithms without fundamentally altering the Fix subscription service.

51. As direct-purchase functionality evolved, Stitch Fix consolidated these offerings into what it ultimately branded as "Freestyle" (at times previously referred to as "Direct Buy," "Direct Purchase," "Shop," or similar names). Under these iterations, by September 2021, both existing and

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

new customers could browse and purchase items directly in a single interface. In its public statements, Stitch Fix repeatedly portrayed this development as an opportunity to broaden its base, attract customers who preferred more traditional e-commerce experiences, position Freestyle as the future of Stitch Fix. At the same time, Stitch Fix also assured investors that Freestyle's offerings were "additive," "incremental," and "complementary" to the Company's flagship Fix business.

52. Internally, however, the Company continued to heavily rely on the Fix model for core revenue, client retention, and long-term value creation. Freestyle introduced a very different customer pathway—one that did not require committing to a curated, periodic shipment—and its performance was closely monitored to evaluate impacts on client acquisition, conversion, and the health of the Company's subscription business. Indeed, as Stitch Fix expanded access to Freestyle, the Company tracked detailed data from controlled tests, onboarding experiments, and segmentation studies to measure precisely how Freestyle interacted with (and potentially affected) the traditional Fix model, according to confidential witness allegations in the Securities Class Action.[1] As described below, the results of this internal testing contradicted the narrative Stitch Fix pushed about Freestyle's compatibility with its core Fix subscription business.

### C. <u>Stitch Fix's Internal Testing Revealed Material Problems with Freestyle</u>

53. As Stitch Fix expanded access to its direct-buy features and later to the consolidated Freestyle interface, the Company conducted a series of controlled experiments to evaluate how directing clients into a direct-purchase pathway affected engagement with the Fix model, according to CW allegations in the Securities Class Action. Multiple CWs reported that these tests (internally referred to as "New Fix Customer Tests" and other onboarding experiments) were run repeatedly throughout 2020 and 2021. The tests compared cohorts of new customers routed into the Fix subscription experience against those funneled into Freestyle or related direct-buy options, measuring conversion, purchase behavior, returns, retention, and projected lifetime value.

[1] While Plaintiffs and their undersigned counsel have conducted their own investigation of the wrongdoings alleged herein, the confidential witness ("CW") statements and related allegations drawn therefrom in this Verified Shareholder Derivative Complaint are based upon the allegations set forth in the operative Securities Class Action complaint, filed September 13, 2024.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

54. As described by these former Stitch Fix employees, internal test results from 2020 and 2021 consistently indicated that steering new customers to Freestyle materially underperformed relative to the Fix pathway, as follows: new clients converted at 30-40% lower rates, spent less, returned more items, and generated significantly weaker long-term value. Analyses also showed that when prospective or existing clients interacted with Freestyle at the outset or were encouraged to do so during onboarding, they were ultimately less likely to order a Fix, engaged less frequently with stylists, and often failed to convert into reliable subscription clients—together demonstrating that Freestyle not only produced lower-value customers but also cannibalized (and therefore harmed) the Fix subscription business.

55. These results were reportedly stored in the Company's A/B testing database, compiled into slide decks and spreadsheets, and documented across internal analytics tools accessible to at least senior Stitch Fix management. According to the CWs, weekly reports and summaries were shared with (and presented to) senior Stitch Fix executives regarding these matters, including Defendant Spaulding, showing that Freestyle-routed clients underperformed compared to Fix-routed clients on nearly every key business metric. Despite this data, the Company continued to devote significant resources to Freestyle's expansion.

## STITCH FIX'S MATERIALLY FALSE AND MISLEADING STATEMENTS DURING THE RELEVANT PERIOD

56. During the relevant period, Stitch Fix falsely and misleadingly represented that Freestyle was performing as intended and strengthening, rather than weakening, the Company's core Fix subscription model. Through earnings calls, investor presentations, and SEC filings, the Company publicly portrayed Freestyle as an "additive," "incremental," and "complementary" extension of the Fix model that broadened the customer base, enhanced client engagement, and otherwise reinforced the overall stability and long-term prospects of the Company—when, in fact, Stitch Fix knew from internal test results that it was not.

57. For instance, on December 7, 2020, in response to an analyst question about the combination of Fix and Freestyle and customer trends, Defendant Lake stated: "At a high level, honestly, I mean, ***what we're seeing is that the two experiences are really additive***" and that "direct

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

buy and Fixes will allow us – ***the kind of combination of those two things will allow us to address many more types of clients***. And what we're realizing and it's really also it's unlocking, I think both client opportunity but also pretty significantly on the wallet share opportunity side where if you're looking for a down jacket to eat outside, as an example, you'd actually love to buy that through Stitch Fix ***in a more frictionless way***, and direct buy is going to be a great way to do that" (during an earnings call for the Company's first quarter of fiscal year 2021 results).[2] During the same earnings call, Defendant Spaulding added that Freestyle's "***ongoing momentum***" would allow the Company to "***attract high-quality clients, but also to convert our large prospect population*** that we estimate is in the millions, clients who are at the precipice, but have not yet converted to Stitch Fix." Defendant Spaulding's statements were repeated in the Company's "Q1 Fiscal 2021 Letter to Shareholders" released the same day. On the December 7, 2020 call, Defendants Lake and Spaulding both acknowledged that decisions about the Company's Freestyle rollout and expansion were driven by its internal testing, stating "***we're always testing things***" (Spaulding), the Company was "beginning to ***experiment with our prospective client base with our direct buy offering***" (Spaulding), and "***we've been doing some testing around what is the best way to introduce direct buy*** and like what is the best way for us to actually figure out like this is somebody who should be on a conversion path to Fixes versus somebody that we actually should have into a direct buy first" (Lake).

58. Later, on February 10, 2021, Defendant Lake made similar claims that the Company's own internal contemporaneous data showed the complementary success of Freestyle alongside the more traditional Fix. When asked a question about Direct Buy's (*i.e.*, Freestyle's) rollout, she stated: "I think this really is one of the most exciting things that I've had the privilege of getting to work on because it's one of those initiatives that is both really powerful and ***we can see in the data that it's working***. And at the same time there's ***still so much opportunity***" (appearing on behalf of Stitch Fix at the Goldman Sachs Technology and Internet Virtual Conference).

59. Then, on June 7, 2021, Defendant Spaulding made similar claims, stating: "The ***success in incrementality that direct buy has demonstrated to date*** gives us high conviction that

[2] Unless otherwise indicated, all emphases herein are added.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

***our personalized shopping experience will significantly broaden the appeal and reach of Stitch Fix*** (during an earnings call for the Company's third quarter of fiscal year 2021 results).

60. Likewise, on September 21, 2021, in response to a direct question from an analyst about "cannibalization," Defendant Spaulding again emphasized growth prospects and reiterated the symbiotic nature of Fix and Freestyle, stating: "what we would anticipate over time is ***many new clients coming in through this new Freestyle experience***, but then finding their way to certain use cases and occasions that a Fix is really a great experience to add on to and vice versa continuing to see clients also enter through [the] Fix business" (during an earnings call in connection with the Company's fourth quarter of fiscal year 2021 results). Regarding cannibalization, Defendant Spaulding answered, "***we think that revenue per active client that we shared and the knowledge we have of like the newer cohorts of clients is the real strength and incrementality of these two offerings really been quite complementary***….[W]e see solid growth in both sides of the business in the coming year."

61. The above statements in ¶¶ 57-60—made, approved, and otherwise authorized by the Individual Defendants—were materially false and misleading when made because they: (i) misrepresented that Freestyle was "additive," "incremental," and "complementary" to the Company's core Fix business, when, in fact, the Company's comprehensive internal data showed the opposite, (ii) failed to affirmatively disclose the results of Stitch Fix's New Fix Customer Tests and other internal tracking data and analyses that contradicted the Company's public statements, (iii) concealed that Freestyle effectively cannibalized the Fix subscription pathway by diverting prospective Fix customers into a model that Stitch Fix knew resulted in inferior engagement, reduced revenue, and poorer retention, and (iv) created the false impression that internal Company data supported Stitch Fix's public claims and projections regarding Freestyle's benefits and growth potential. Additionally, as a result of these false statements and omissions, Stitch Fix's positive statements about the Company's business, operations, and prospects were likewise materially misleading and lacked a reasonable basis.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**THE TRUTH EMERGES OVER SEVERAL PARTIAL DISCLOSURES**

62. Stitch Fix investors began to learn the truth about Freestyle's weak performance and its adverse relationship to the Company's core Fix business through a series of partial disclosures over the course of 2021 and 2022. Although the Company framed these announcements as isolated operational challenges, each one revealed facts that were inconsistent with the narrative advanced by Stitch Fix that Freestyle was "additive," "incremental," and "complementary" to Fix.

63. The first partial disclosure occurred on March 8, 2021, when the Company announced that it would delay its planned full launch of Direct Buy (later branded as Freestyle) to all new clients until the end of the fiscal year (July 31, 2021). Defendant Spaulding stated the Company would not "introduce direct buy to new clients [until] the end of the fiscal year," attributing the postponement to the need to "evolv[e] our client onboarding process and user interface, tighten[] logistics and operations, and streamlin[e] client style collection information." The Company downplayed the Freestyle delay as merely an effort to just "get it right." Due to the Freestyle launch delay, the Company revised its 2021 fiscal guidance downward at the time. Following this announcement, the Company's stock price tumbled 28%, from $68.52 per share on March 8, 2021 to $49.23 per share on March 9, 2021.

64. A fuller picture about Freestyle's problems began taking shape on December 7, 2021, when Stitch Fix announced lower-than-anticipated net client additions, reported a net loss of $1.8 million, and cut its full-year revenue projections. During the earnings call the same day for the Company's first quarter 2022 results, Defendant Spaulding admitted for the first time that the Company's "expansion into Freestyle" could result in "cannibalization," conceding that the new offering created friction within Stitch Fix's client acquisition funnels. Spaulding explained that "people are making a trade-off between do I want to try Fix [or] do I want to try Freestyle," that customers "may be distract[ed]" during onboarding, and that the Company "experienced lower Fix conversion rates than [] expected." Yet, Spaulding portrayed these setbacks as purportedly "short-term impacts." Following this announcement, Stitch Fix's stock dropped by $5.97 per share (or about 24%), to close at $19.00 per share on December 8, 2021.

65. Additional adverse information surfaced on March 8, 2022, when Stitch Fix reported earnings for the second quarter of 2022, issued a weak outlook for the third quarter, and again reduced its full-year revenue guidance. During the after-hours earnings call the same day, Defendant Spaulding revealed continued problems with the interplay between Freestyle and Fix. She explained that "in our efforts to launch and promote Freestyle, we chose to direct visitors coming to stitchfix.com towards the Freestyle experience" and that by leading new clients first to Freestyle, Stitch Fix "created friction for those seeking a Fix." Spaulding further stated that "conversion of new visitors for Fix and Freestyle is not where we want it to be." She linked these developments to the Company's reduced outlook, noting that it "revised outlook for the back half [of the fiscal year] due to the compounding nature of few new clients buying." Following this disclosure, Stitch Fix's stock fell an additional $0.67 per share (approximately 6%), closing at $10.34 on March 9, 2022.

66. The final blow came in June 2022. On June 9, 2022, Defendant Spaulding emailed all Company employees to announce that Stitch Fix would reduce its entire workforce by 15%, explaining that the layoffs were needed to "position ourselves for profitable growth." Later that day, in its Form 10-Q Quarterly Report for the third quarter of fiscal 2022, Stitch Fix reported a 4.9% year-over-year decline in active clients that was "driven by client conversion challenges and lower site traffic" and "onboarding friction" for new clients. During the related earnings call, Defendant Spaulding again admitted that new-visitor conversion was "not where we wanted it to be" and announced a reversal of the Company's prior Freestyle-first strategy. Going forward, Stitch Fix would "direct[] all stitchfix.com traffic to a simplified Fix first onboarding path," with Freestyle accessible only after a client scheduled a Fix. Spaulding also revealed that only 20% of "Freestyle first customers" repurchased within thirty days. The Company simultaneously issued another downward revision to revenue guidance, projecting a year-over-year decline of between 13% and 15%. Upon this latest shocking news, Stitch Fix's stock fell $2.29 (or about 27%), closing at $6.34 per share on June 10, 2022, damaging investors and shareholders.

67. In the months following these disclosures, additional facts and developments emerged confirming the significant and lasting damage caused by the Freestyle campaign—making clear that that Freestyle was not merely an underperforming venture, but a strategic failure that

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

materially undermined Stitch Fix's core business and precipitated leadership upheaval. For instance, on January 5, 2023, Stitch Fix abruptly announced that Defendant Spaulding would immediately "step down" as CEO in connection with the Company's "Reduction in Force" and reinstalled Defendant Lake as Interim CEO. Then, on March 7, 2023, Defendant Lake conceded that the Company would "refocus" on Fix and no longer treat Freestyle as a "separate business unit" because it was "less effective" as a "customer acquisition vehicle" and had "made it harder for us to be able to be acquiring people into the Fix channel." And on June 7, 2023, Lake further admitted that Freestyle-first clients "did not generate the same level of engagement and revenue delivery that historically our [Fix] clients did."

68. The Company has been severely damaged by the Individual Defendants' misconduct. This shareholder derivative action seeks to recoup losses that Stitch Fix has sustained (and will continue sustaining) in connection with the Individual Defendants' misconduct and wrongdoing.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

## THE SECURITIES CLASS ACTION

69. The Individual Defendants' wrongful conduct alleged herein has damaged the Company and subjected it to costly litigation. In addition to the Company, the Securities Class Action names Lake and Spaulding as defendants and asserts claims for violations of the federal securities laws under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5. Generally, the Securities Class Action alleges that the defendants named therein misled investors by concealing significant problems with Stitch Fix's Freestyle business while publicly touting its prospects—when, in fact, internal testing showed that Freestyle was cannibalizing the Fix business, that new clients routed to Freestyle converted at substantially lower rates, and that the initiative was harming the Company's core business.

70. By Order dated July 9, 2025, U.S. District Judge P. Casey Pitts denied, in part, the motion to dismiss the Securities Class Action, holding that investors stated actionable claims against the defendants under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 and adequately alleged that the defendants acted with a "strong inference of scienter"—or intent to defraud. More specifically, Judge Pitts held that the operative complaint alleged with particularity that the defendants made materially false and misleading statements in December 2020,

February 2021, June 2021, and September 2021 representing that Freestyle was "additive" and "complementary" to Fix, that Freestyle would "broaden" and strengthen Stitch Fix's business generally, and that the Company could "see in the data that it's working." The Court found that the Securities Class Action plaintiff adequately alleged that these statements, "by omitting the internal test results showing that Direct Buy was cannibalizing Fix customers, directly contradicted what defendants knew at the time and would have given reasonable investors the impression of a state of affairs that differed materially from the one that actually existed." The Order explained: "Once defendants chose to extol the incrementality, complementarity, and additive nature of Direct Buy and the Fix, and to proclaim that their data showed the success of Direct Buy, they were bound to disclose the multiple negative internal test results that strongly contradicted such laudatory conclusions." Judge Pitts also found that the complaint adequately alleged a "strong inference of scienter" because Lake and Spaulding either directly knew about the negative New Fix Customer Test results, had access to information through the Company's A/B database showing that Direct Buy was cannibalizing Fix, or received weekly email reports containing customer acquisition and retention data showing the same.

71. The Securities Class Action has exposed the Company to massive liability for securities fraud.

## STITCH FIX REPURCHASED ITS STOCK DURING THE RELEVANT PERIOD AT ARTIFICIALLY INFLATED PRICES

72. On January 6, 2022, Stitch Fix announced that the Board had authorized a share repurchase program under which the Company could purchase up to $150 million of its Class A common stock. At the time, the Company issued a press release stating that the repurchase program "reflects the confidence we have in our strategy, unique value proposition and the growth potential ahead for Stitch Fix, which we believe is not reflected in the current market valuation," quoting Defendant Spaulding.

73. While its share price was artificially inflated because of the false and misleading statements and other misconduct alleged herein, the Individual Defendants serving on the Board as

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

of January 6, 2022 harmed Stitch Fix by causing the Company to purchase large amounts of its own common stock.

74. According to the Company's 10-Q Quarterly Reports filed with the SEC on March 9, 2022 and June 9, 2022, the Board's authorization resulted in the following repurchases by Stitch Fix:

| Time Period | Number of Shares Repurchased | Average Price Paid Per Share | Total Amount Paid |
|---|---|---|---|
| January 2022 | 682,184 | $16.12 | $10,996,806 |
| February 2022 | 581,411 | $15.49 | $9,006,056 |
| April 2022 | 1,038,546 | $9.62 | $9,990,813 |
| **Totals** | **2,302,141** | | **$29,993,675** |

75. During this time, Stitch Fix's common stock true value was $6.34 per share (*i.e.*, as it was after the full truth was publicly revealed by June 10, 2022), and thus cost the Company $14,595,574. Accordingly, the Company was forced to overpay for its common stock by about $15.4 million.

76. In addition to these Stitch Fix stock repurchases constituting a violation of Section 10(b) of the Exchange Act, the Board's authorization of this program constitutes corporate waste. No reasonable person would purchase Stitch Fix common stock at prices artificially inflated by fraud, as they were here.

**INSIDER SALES BY THE INSIDER TRADING DEFENDANTS**

77. During the relevant period, Defendants Lake, Spaulding, Hansen, Smith, and Anderson (together, the "Insider Trading Defendants") sold 3,368,758 Stitch Fix shares for $147,297,999 in proceeds. At the times of these stock sales, each seller, as an officer or director of Stitch Fix, was in possession of (and privy to) material adverse non-public information about the Company's true business health and prospects. These sales were motivated in whole or part by this material adverse non-public information regarding the Company's true business conditions, as alleged herein.

78. These Insider Trading Defendants sold most of their stock while Stitch Fix's stock price was significantly distorted by the Company's material misstatements, and as high as $87.36

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

per share. Indeed, once the full truth was revealed by June 10, 2022, the stock fell to $6.34 per share, and now trades at just $4.21 per share as of the close of trading on November 7, 2025.

79. These trades were unusual in timing and amount based on the Insider Trading Defendants' past trading activity. Furthermore, these trades represented a concerted, systematic effort by corporate insiders to profit from insider trading, as multiple members of the Board and senior management sold massive quantities of stock. These sums are large by any measure and are material to each Insider Trading Defendant.

80. Trades made by each of the Insider Trading Defendants during the relevant period are shown below.

81. Defendant Lake sold 2,154,138 shares for total proceeds of $98,260,695, as follows:

| Transaction Date | Number of Shares | Approximate Average Sale Price | Proceeds |
|---|---|---|---|
| 6/17/20 | 47,029 | $24.42 | $1,148,536 |
| 6/18/20 | 36,641 | $25.10 | $919,853 |
| 6/19/20 | 36,643 | $24.51 | $898,152 |
| 7/15/20 | 36,641 | $26.31 | $963,936 |
| 7/16/20 | 36,641 | $26.86 | $984,289 |
| 7/17/20 | 36,643 | $26.97 | $988,411 |
| 8/19/20 | 36,641 | $24.75 | $906,816 |
| 8/20/20 | 36,641 | $24.57 | $900,357 |
| 8/21/20 | 36,643 | $23.76 | $870,756 |
| 9/16/20 | 39,311 | $28.47 | $1,119,006 |
| 9/17/20 | 36,641 | $28.32 | $1,037,515 |
| 9/18/20 | 44,362 | $27.79 | $1,232,677 |
| 10/21/20 | 37,441 | $34.66 | $1,297,521 |
| 10/22/20 | 36,641 | $35.70 | $1,307,955 |
| 10/23/20 | 35,843 | $35.07 | $1,257,168 |
| 11/18/20 | 36,648 | $36.00 | $1,318,406 |
| 11/19/20 | 36,648 | $35.06 | $1,285,180 |
| 11/20/20 | 36,653 | $36.08 | $1,322,649 |
| 12/16/20 | 46,443 | $63.83 | $2,964,296 |

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

| Transaction Date | Number of Shares | Approximate Average Sale Price | Proceeds |
|---|---|---|---|
| 12/17/20 | 43,775 | $67.60 | $2,959,527 |
| 12/18/20 | 48,827 | $68.55 | $3,346,603 |
| 1/19/21 | 43,774 | $75.78 | $3,316,326 |
| 1/20/21 | 43,775 | $83.89 | $3,671,847 |
| 1/21/21 | 43,778 | $81.90 | $3,584,518 |
| 2/22/21 | 43,774 | $76.49 | $3,348,065 |
| 2/23/21 | 43,775 | $67.10 | $2,936,401 |
| 2/24/21 | 43,778 | $70.99 | $3,106,771 |
| 3/17/21 | 43,774 | $53.92 | $2,360,140 |
| 3/18/21 | 43,775 | $53.28 | $2,331,871 |
| 3/19/21 | 48,817 | $52.49 | $2,561,568 |
| 4/20/21 | 33,358 | $44.54 | $1,485,635 |
| 4/21/21 | 33,359 | $42.86 | $1,429,190 |
| 4/22/21 | 33,360 | $43.16 | $1,439,732 |
| 5/17/21 | 33,358 | $42.76 | $1,426,885 |
| 5/18/21 | 33,359 | $44.08 | $1,470,047 |
| 5/19/21 | 33,360 | $43.58 | $1,453,906 |
| 6/16/21 | 106,274 | $59.09 | $6,282,836 |
| 6/17/21 | 43,775 | $59.86 | $2,620,000 |
| 6/18/21 | 48,827 | $60.56 | $2,956,859 |
| 7/14/21 | 43,774 | $59.06 | $2,585,472 |
| 7/15/21 | 43,775 | $54.91 | $2,403,842 |
| 7/16/21 | 43,778 | $54.04 | $2,365,965 |
| 8/16/21 | 33,358 | $41.13 | $1,371,850 |
| 8/17/21 | 33,359 | $40.65 | $1,356,128 |
| 8/18/21 | 33,360 | $39.78 | $1,326,874 |
| 9/15/21 | 33,358 | $34.31 | $1,144,472 |
| 9/16/21 | 33,359 | $33.91 | $1,131,066 |
| 9/17/21 | 38,409 | $34.43 | $1,322,305 |
| 10/18/21 | 33,358 | $32.36 | $1,079,436 |
| 10/19/21 | 33,359 | $32.95 | $1,099,214 |

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

| Transaction Date | Number of Shares | Approximate Average Sale Price | Proceeds |
|---|---|---|---|
| 10/20/21 | 33,360 | $33.31 | $1,111,382 |
| 11/16/21 | 33,358 | $32.17 | $1,073,183 |
| 11/17/21 | 33,359 | $32.08 | $1,070,247 |
| 11/18/21 | 33,368 | $30.18 | $1,007,053 |

82. Defendant Spaulding sold 113,606 shares for total proceeds of $5,081,680, as follows:

| Transaction Date | Number of Shares | Approximate Average Sale Price | Proceeds |
|---|---|---|---|
| 9/16/20 | 14,877 | $28.72 | $427,267 |
| 11/27/20 | 12,473 | $40.00 | $498,920 |
| 12/16/20 | 9,873 | $64.30 | $634,834 |
| 12/21/20 | 5,020 | $69.75 | $350,145 |
| 3/15/21 | 17,494 | $60.02 | $1,049,922 |
| 3/17/21 | 7,231 | $56.33 | $407,286 |
| 6/8/21 | 6,340 | $66.72 | $423,005 |
| 6/16/21 | 9,873 | $61.13 | $603,536 |
| 9/15/21 | 11,209 | $35.69 | $400,049 |
| 12/15/21 | 11,209 | $18.50 | $207,367 |
| 3/16/22 | 8,007 | $9.91 | $79,349 |

83. Defendant Hansen sold 145,000 shares for total proceeds of $6,016,695, as follows:

| Transaction Date | Number of Shares | Approximate Average Sale Price | Proceeds |
|---|---|---|---|
| 9/24/20 | 4,000 | $26.21 | $104,840 |
| 10/5/20 | 4,000 | $27.58 | $110,320 |
| 10/8/20 | 20,250 | $30.00 | $607,500 |
| 10/20/20 | 20,250 | $30.00 | $607,530 |
| 11/5/20 | 4,000 | $35.26 | $141,040 |
| 11/27/20 | 20,250 | $40.00 | $810,000 |
| 12/7/20 | 4,000 | $35.68 | $142,720 |

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

| Transaction Date | Number of Shares | Approximate Average Sale Price | Proceeds |
|---|---|---|---|
| 12/8/20 | 8,250 | $51.00 | $420,750 |
| 3/10/21 | 10,000 | $50.08 | $500,804 |
| 4/5/21 | 10,000 | $48.70 | $486,992 |
| 5/5/21 | 10,000 | $42.19 | $421,900 |
| 6/7/21 | 10,000 | $55.83 | $558,305 |
| 7/6/21 | 10,000 | $62.57 | $625,694 |
| 8/5/21 | 10,000 | $47.83 | $478,300 |

84. Defendant Smith sold 606,014 shares for total proceeds of $27,658,688, as follows:

| Transaction Date | Number of Shares | Approximate Average Sale Price | Proceeds |
|---|---|---|---|
| 6/15/20 | 20,000 | $23.12 | $462,462 |
| 6/17/20 | 23,007 | $25.08 | $577,016 |
| 7/15/20 | 40,000 | $26.34 | $1,053,610 |
| 8/17/20 | 20,000 | $23.95 | $479,081 |
| 8/18/20 | 20,000 | $25.17 | $503,382 |
| 9/15/20 | 40,000 | $29.04 | $1,161,487 |
| 9/16/20 | 3,007 | $28.72 | $86,361 |
| 10/15/20 | 40,000 | $32.25 | $1,289,902 |
| 11/16/20 | 40,000 | $36.01 | $1,440,534 |
| 12/15/20 | 40,000 | $63.69 | $2,547,469 |
| 1/15/21 | 40,000 | $74.39 | $2,975,573 |
| 2/16/21 | 40,000 | $84.61 | $3,384,382 |
| 3/15/21 | 40,000 | $57.46 | $2,298,535 |
| 4/15/21 | 40,000 | $45.81 | $1,832,329 |
| 5/17/21 | 40,000 | $43.31 | $1,732,225 |
| 6/15/21 | 40,000 | $60.92 | $2,436,876 |
| 6/24/21 | 20,000 | $62.29 | $1,245,750 |
| 9/23/21 | 20,000 | $40.73 | $814,667 |
| 10/11/21 | 20,000 | $33.49 | $669,888 |
| 11/10/21 | 20,000 | $33.36 | $667,159 |

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

85. Defendant Anderson sold 350,000 shares for total proceeds of $10,280,241, as follows:

| Transaction Date | Number of Shares | Approximate Average Sale Price | Proceeds |
|---|---|---|---|
| 10/6/20 | 46,170 | $29.09 | $1,342,864 |
| 10/7/20 | 269,003 | $29.34 | $7,892,978 |
| 10/8/20 | 34,827 | $29.99 | $1,044,399 |

## HARM TO THE COMPANY

86. As a result of the Individual Defendants' improprieties, Stitch Fix disseminated improper public statements concerning its core business operations and financial prospects. This misconduct has devastated Stitch Fix's credibility as reflected by the Company's almost $250 million market capitalization loss (27%) following the June 2022 disclosures. The Individual Defendants have severely harmed the Company. Damages to the Company include substantial loss of shareholder value and significant costs already incurred (and to be incurred) stemming from the events and allegations described herein, including the costs of defending against the Securities Class Action and paying any settlement or judgment that may result therefrom.

87. Additionally, while engaging in or permitting the misconduct alleged above, the Individual Defendants caused the Company to repurchase approximately $30 million worth of its own common stock at artificially inflated prices. Consequently, Stitch Fix overpaid for these approximately 2.3 million shares by almost $15.4 million.

88. The Company's business, goodwill, and reputation with its business partners, regulators, and shareholders have also been gravely impaired, and the credibility and motives of management and the Board are in serious doubt.

89. While the Individual Defendants' actions have severely harmed the Company, each of them has been awarded generous compensation and stock packages and otherwise profited through their wrongful conduct, including through unlawful insider trading, which must be recouped and disgorged.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**DEMAND WOULD BE FUTILE**

90. Plaintiffs incorporate by reference and reallege each and every allegation above as though fully set forth herein.

91. Plaintiffs bring this action derivatively in the right and for the benefit of Stitch Fix pursuant to Rule 23.1 of the Federal Rules of Civil Procedure to redress injuries suffered by the Company as a direct and proximate result of the breaches of fiduciary duty and violations of the federal securities laws by the Individual Defendants alleged herein. Stitch Fix is named as a nominal defendant solely in a derivative capacity.

92. Plaintiffs will adequately and fairly represent the interests of Stitch Fix in enforcing and prosecuting its rights, and Plaintiffs have retained counsel experienced in shareholder litigation.

93. Plaintiffs are current Stitch Fix shareholders, were shareholders of the Company at the time of the wrongdoing alleged herein, and have continuously held their shares since that time.

94. Because a majority of the current members of the Stitch Fix Board: (i) lack independence and (ii) face a substantial likelihood of liability for the acts and omissions complained of herein, prosecution of this action, independent of the current Board, is in the best interests of the Company and its stockholders.

95. Stitch Fix is controlled by its Board, which at the time this action was commenced consists of the following eight members: Defendants Lake, Gurley, McCollam, and Williams (together, the "Demand Defendants"), along with non-party directors Matt Baer, Kofi Amoo-Gottfried, Timothy Baxter, and Fiona Tan.

96. Plaintiffs have not made a pre-suit litigation demand on the Board to institute this action. Any such demand would be a futile and useless act because at least half of its current members (*i.e.*, at least four directors) is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action under the demand futility analysis set forth in *United Food and Comm. Workers Union v. Zuckerberg*, 262 A.3d 1034 (Del. 2021). Here, demand is excused as futile as to at least five members of the Board.

**Defendant Lake Is Interested in This Litigation Because She is a Defendant in the Securities Class Action**

97. Lake is disabled from considering a demand here because she is a defendant in the Securities Class Action, where claims for fraud have been upheld against her by Judge Pitts under the heightened pleading requirements of the federal securities laws. The pendency of these claims for violating the federal securities laws in the Securities Class Action—where Lake faces a substantial likelihood of liability—renders it impossible for Lake to impartially consider a shareholder demand regarding the wrongdoing alleged herein.

**Defendant Lake Is Financially Interested in This Litigation and Not Independent**

98. Pre-suit demand is further excused as to Defendant Lake because she is financially interested in the outcome of this shareholder derivative litigation given her alleged insider trading. Lake financially benefited from the unlawful conduct complained of in this litigation in that she participated in a scheme to artificially inflate the value of Stitch Fix stock by issuing (or causing to be issued) materially false and misleading statements about Stitch Fix's business prospects to the SEC and investors, and then capitalized on these false disclosures by selling Stitch Fix stock at significantly inflated prices. These trades were only possible because Defendant Lake had in her possession material, non-public information about these matters, which she knew was causing Stitch Fix's stock to trade at artificially inflated prices. During the relevant period, Defendant Lake reaped more than $98 million in unlawful insider trading proceeds. The pecuniary value that Lake received from these trades is material to her and she would not jeopardize the value she received from these trades by considering a pre-suit demand in the instant case, as Plaintiffs seek disgorgement of all proceeds from the Individual Defendants stemming from unlawful conduct, including insider trading. It would be antithetical to her economic interests to initiate and pursue claims challenging her own Stitch Fix stock sales. Accordingly, Lake cannot independently consider a pre-suit litigation demand.

99. Defendant Lake also lacks independence because she is Stitch Fix's founder, served as its CEO on multiple occasions, and currently serves as an employee of the Company. Stitch Fix's

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

most recent proxy statement filed with the SEC on October 31, 2025 concedes that Lake is not independent due to her ongoing employment with Stitch Fix.

**Non-Party Baer Is Not Independent**

100. Non-party Baer lacks independence because he currently serves as the Company's Chief Executive Officer, a position he has held since June 2023. Stitch Fix's most recent proxy statement filed with the SEC on October 31, 2025 concedes that Baer is not independent due to his ongoing employment with Stitch Fix.

101. Baer's position and livelihood depend upon the good graces of the other Demand Defendants. Baer joined the Company on June 26, 2023. Baer receives a base salary of $850,000 per year plus an annual bonus target of 100% of his salary (*i.e.*, another $850,000), the latter subject to the sole discretion of the Board (or the Compensation Committee). Upon joining Stitch Fix, under the Company's incentive plan, Baer received 1,100,000 Stitch Fix restricted stock units (RSUs) and an option grant to purchase 2,200,000 shares of the Company's stock, 16 2/3% of which began vesting six months after joining Stitch Fix (with the rest incrementally vesting quarterly over the next ten vesting periods). For the 2023 fiscal year, Baer received $9,853,545 in compensation from the Company. This included $65,385 in prorated salary, a one-time $400,000 signing bonus, $4,070,000 in stock awards, $5,211,140 in option awards, $79,396 in executive bonuses, and $27,625 in other compensation. For the 2024 fiscal year, Baer received $1,464,928 in compensation from the Company. This included $850,900 in salary, $537,880 in executive bonuses, and $76,148 in other compensation. For the 2025 fiscal year, Baer received $10,129,032 in compensation from the Company. This included $850,900 in salary, $7,821,663 in stock awards, $1,443,369 in executive bonuses, and $14,000 in other compensation. These amounts are material to Baer, and Baer would never act to jeopardize these substantial payments by pursuing claims against the same directors who determine his compensation and continued employment.

102. For these reasons, Baer would never act adversely to the Demand Defendants by pursuing the claims alleged herein.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**Four of Eight Demand Board Members Face a Substantial Likelihood of Liability for Their Wrongful Conduct**

103. Four members of the current eight-person Stitch Fix Board—Defendants Lake, Gurley, McCollam, and Williams—face a substantial likelihood of liability for their wrongful misconduct alleged herein, thereby excusing a pre-suit demand. These Demand Defendants presided over the Company throughout the relevant period (between June 9, 2020 and June 9, 2022), corresponding to the class period in the Securities Class Action during which Stitch Fix made the false and misleading statements described above. Each of these Board members breached their fiduciary duties to the Company by knowingly or recklessly issuing, approving, or allowing Stitch Fix to issue false and misleading statements in press releases, SEC filings, and other public communications concerning, at least: (a) the purportedly "additive," "incremental," and "complementary" benefits Freestyle provided to the core Fix business, when internal Company data showed the opposite, (b) the adverse results of Stitch Fix's New Fix Customer Tests and other internal tracking data and analyses, which contradicted the Company's public representations, (c) the fact that Freestyle was cannibalizing the Fix subscription pathway by diverting potential Fix customers into a model that Stitch Fix knew generated inferior engagement, reduced revenue, and poorer retention, (d) the absence of internal data supporting Stitch Fix's public claims and projections regarding Freestyle's supposed benefits and growth potential, and (e) that, as a result of these false statements and omissions, the Individual Defendants' positive statements about the Company's business, operations, and prospects lacked a reasonable basis and were materially misleading.

104. Defendants Lake, Gurley, McCollam, and Williams also face a substantial likelihood of liability for causing the Company to repurchase its own shares of stock at artificially inflated prices during the relevant period, further rendering a demand upon them futile. Stitch Fix paid approximately $30 million to repurchase more than 2.3 million shares between January 2022 and April 2022. As a result, the Company overpaid approximately $15.4 million for the repurchased shares.

105. Alternatively, or in addition to the foregoing breaches, the Demand Defendants face a substantial likelihood of liability for breaching their fiduciary duties by failing to take any meaningful action to implement or enforce any meaningful internal controls or oversight mechanisms governing Stitch Fix's public disclosure practices and insider-trading safeguards—which culminated in the Company issuing the false and misleading statements described above and permitted the Insider Trading Defendants to reap immense proceeds while in possession of material non-public information. These actions demonstrate a sustained failure by a majority of the current Board to exercise their fiduciary duties in good faith and to ensure the integrity of the Company's corporate governance and internal control environment.

**Demand Is Further Excused as to the Two Audit Committee Defendants**

106. Further, Defendants McCollam and Williams were members of the Audit Committee during the relevant period and therefore had a heightened duty to oversee Stitch Fix's public disclosures and its risk-assessment and internal control-related functions and other heightened obligations set for above. In their capacity as members of the Audit Committee, Defendants McCollam and Williams were privy to specific information related to the Company's business, operations, and prospects, which would reasonably put them on notice that the public statements set forth above were materially false and misleading when made. Defendants McCollam and Williams were responsible for knowingly or recklessly issuing or causing or allowing the issuance of the false and misleading statements alleged herein, and thus breached their fiduciary duties to the Company. By allowing such misleading information or failing to correct these false statements, Defendants McCollam and Williams face a sufficiently significant likelihood of liability so as to render them interested. Accordingly, Defendants McCollam and Williams cannot adequately and independently consider a demand.

**Additional Demand Futility Allegations**

107. Demand is further excused because any suit by the Board to address the wrongdoing alleged herein would increase the exposure of nominal defendant Stitch Fix to liability for violations of the federal securities laws in the Securities Class Action and would potentially result in additional lawsuits being filed against members of the Board. If Stitch Fix pursued its rights of action in this

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

case, the Company's efforts would undercut or even compromise the defense and settlement of the Securities Class Action, making demand on each of the directors futile.

108. Under these circumstances, Plaintiffs must act to prosecute the Company's claims on its behalf.

## CLAIMS FOR RELIEF

### COUNT I
### Derivative Claim for Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 Against the Individual Defendants

109. Plaintiffs incorporate by reference and reallege each and every allegation above as though fully set forth herein.

110. During the relevant period, the Individual Defendants disseminated or approved false and misleading statements about Stitch Fix, which they knew or recklessly disregarded were false or misleading, and which were intended to deceive, manipulate, or defraud. Those statements and the Individual Defendants' conduct artificially inflated the price of the Company's common stock.

111. While the price of the Company's common stock was artificially inflated, the Individual Defendants participated in a scheme with the purpose and effect of defrauding Stitch Fix by causing the Company to repurchase approximately $30 million worth of its own stock. In repurchasing these 2,302,141 shares, Stitch Fix overpaid by approximately $15.4 million given the true value of the Company's stock at the time.

112. The Individual Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by, among other things: (i) employing devices, schemes, and artifices to defraud; (ii) making untrue statements of material facts or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (iii) engaging in acts, practices, and a course of business that operated as a fraud or deceit upon Stitch Fix in connection with the Company's repurchases of its own stock during the period of wrongdoing.

113. The Individual Defendants, individually and collectively, directly and indirectly, by the use of means or instrumentalities of interstate commerce or of the mail: (i) engaged and participated in a continuous course of conduct that operated as a fraud and deceit upon the Company; (ii) made various false or misleading statements of material facts and omitted to state material facts

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; (iii) made the above statements intentionally or with severely reckless disregard for the truth; and (iv) employed devices and artifices to defraud in connection with the purchase and sale of Stitch Fix stock, which were intended to, and did: (a) deceive Stitch Fix and its shareholders regarding, among other things, whether the Freestyle segment would be "additive," "incremental," and "complementary" to the core Fix business; (b) artificially inflate and maintain the market price of Stitch Fix's stock; and (c) cause Stitch Fix to repurchase the Company's stock at artificially inflated prices and suffer losses when the true facts became known. Throughout the relevant period, the Individual Defendants were in possession of material nonpublic information regarding the above matters.

114. The Individual Defendants, as directors and officers of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to and did control the conduct complained of herein and the content of Stitch Fix's public statements.

115. Stitch Fix would not have purchased these securities at the prices it paid, or at all, but for the artificial inflation in the Company's stock price caused by the Individual Defendants' false or misleading statements.

116. As a direct and proximate result of the Individual Defendants' wrongful conduct, the Company suffered damages in connection with repurchasing its own stock during the relevant period. By reason of such conduct, the Individual Defendants are liable to the Company pursuant to Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

117. Plaintiffs, on behalf of the Company, have no adequate remedy at law.

**COUNT II**
**Derivative Claim for Violations of Sections 10(b) and 21D of the Exchange Act Against Defendants Lake and Spaulding**

118. Plaintiffs incorporate by reference and reallege each and every allegation above as though fully set forth herein.

119. Defendants Lake and Spaulding are named defendants in the Securities Class Action.

120. Stitch Fix is also named as a defendant in the Securities Class Action, where the plaintiff asserts claims under the federal securities laws for, *inter alia*, violations of Section 10(b). If the Company is found liable for violating the federal securities laws, the Company's liability will arise, in whole or in part, from the intentional, knowing, or reckless acts or omissions of Defendants Lake and Spaulding, as alleged herein. The Company is entitled to receive contribution from Defendants Lake and Spaulding in connection with the Securities Class Action.

121. Defendants Lake and Spaulding, because of their positions of control and authority as Stitch Fix directors and officers during the relevant period, had the power and/or ability to, and did, directly or indirectly, control or influence Stitch Fix's general affairs, including the content of public statements about the Company, and had the power and/or ability, directly or indirectly, to control or influence the specific corporate statements and conduct complained of herein and in the Securities Class Action that violated Section 10(b) of the Exchange Act and Rule 10b-5.

122. Defendants Lake and Spaulding are liable under Section 10(b), 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act. As a result, Defendants Lake and Spaulding have damaged Stitch Fix and are liable to the Company for contribution or indemnification.

## COUNT III
## Derivative Claim for Breach of Fiduciary Duty Against the Individual Defendants

123. Plaintiffs incorporate by reference and reallege each and every allegation above as though fully set forth herein.

124. As officers or directors of Stitch Fix, the Individual Defendants owe (and owed) the Company fiduciary duties of due care and loyalty.

125. By virtue of their positions as officers and/or directors, the Individual Defendants at all relevant times had the power to and did control, influence, and cause the Company to engage in the practices complained of herein.

126. The Individual Defendants knowingly or recklessly breached their fiduciary duties to the Company by repeatedly approving and causing the Company to issue false and misleading

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

statements to shareholders, by failing to promptly correct such false and misleading public statements, and by failing to disclose known adverse results of Stitch Fix's New Fix Customer Tests and other internal tracking data and analyses that contradicted the Company's public representations. The Individual Defendants also knowingly or recklessly violated the Company's Code of Conduct and the Audit Committee Defendants (McCollam and Williams) knowingly or recklessly violated their duties and responsibilities established under the Company's Audit Committee Charter. The Individual Defendants further breached their fiduciary duties by failing to take any meaningful action to implement or enforce any meaningful internal controls or oversight mechanisms governing Stitch Fix's public disclosure practices and insider-trading safeguards— which culminated in the Company issuing the false and misleading statements described above and permitted the Insider Trading Defendants to reap immense proceeds while in possession of material non-public information.

127. The Company's alleged liability in the Securities Class Action is a result of the conduct described herein and arises from the knowing, disloyal, and/or bad faith acts and omissions of the Individual Defendants.

128. The Individual Defendants acted in bad faith and violated their fiduciary duties of care and loyalty owed to the Company.

129. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary duties, the Company has sustained significant damages.

130. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

**COUNT IV**
**Derivative Claim for Unjust Enrichment Against the Individual Defendants**

131. Plaintiffs incorporate by reference and reallege each and every allegation above as though fully set forth herein.

132. By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of the Company.

133. The Individual Defendants were unjustly enriched as a result of the compensation, fees, and stock they received and other profits and benefits collected (including insider trading

profits) while breaching their fiduciary duties, issuing false and misleading statements to shareholders, and committing the other wrongdoing alleged herein. Under these circumstances, it would be inequitable for the Individual Defendants to retain such profits and benefits.

134. Plaintiffs, as shareholders and representatives of the Company, seek restitution and disgorgement from the Individual Defendants, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained as a result of the wrongful conduct and breaches of fiduciary duties alleged herein.

135. Plaintiffs, on behalf of the Company, have no adequate remedy at law.

## COUNT V
## Derivative Claim for Insider Trading Against Defendants Lake, Spaulding, Hansen, Smith, and Anderson

136. Plaintiffs incorporate by reference and reallege each and every allegation above as though fully set forth herein.

137. By reason of their position as officers or directors of Stitch Fix, at the time the Insider Trading Defendants Lake, Spaulding, Hansen, Smith, and Anderson sold their Stitch Fix shares, they had access to and knew highly material non-public information regarding Stitch Fix, and knew that the public disclosure of this information would adversely affect the price of Stitch Fix stock. These defendants collectively sold over $147 million worth of Company stock while in possession of information regarding Stitch Fix's internal test results showing that Freestyle was cannibalizing the Company's core Fix business and materially weakening customer conversion and retention.

138. Insider Trading Defendants Lake, Spaulding, Hansen, Smith, and Anderson sold their shares motivated, in whole or in part, by such material adverse non-public information and used said information for personal gain, in breach of their fiduciary duties. Through these sales, the Insider Trading Defendants were able to sell millions of shares of Stitch Fix's stock while valued at prices higher than the Company's stock would ever reach again.

139. By reason of the insider sales, Lake, Spaulding, Hansen, Smith, and Anderson unjustly enriched themselves and profited through their fiduciary positions, and are obliged to disgorge unlawful profits to Stitch Fix.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of Stitch Fix, demand judgment against the Individual Defendants, and each of them, jointly and severally, as follows:

(a) Determining that this action is a proper derivative action and that Plaintiffs are appropriate representatives of the Company for this action;

(b) Determining that a pre-suit litigation demand on the Board would be futile and is therefore excused;

(c) Declaring that each of the Individual Defendants breached their fiduciary duties to the Company, were unjustly enriched, engaged in unlawful insider trading, and violated the federal securities laws;

(d) Determining and awarding to the Company the damages sustained by it as a result of the breaches set forth above, disgorgement, and/or or restitution, from each of the Individual Defendants, jointly and severally, together with interest thereon;

(e) Directing Stitch Fix to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Stitch Fix and its shareholders from a repeat of the damaging events described herein, including implementing the following corporate governance changes: (i) enhancements to the Company's provisions controlling for insider selling, (ii) strengthening the Company's oversight of disclosure procedures, (iii) enhancements to the Audit Committee Charter and responsibilities of Audit Committee members, (iv) expanded training programs focused on compliance, internal controls policies, risk assessment, and other relevant topics, and (v) the appointment of additional independent directors to the Board;

(f) Disgorging all unlawful insider trading profits;

(g) Awarding to Plaintiffs the costs and disbursements of this action, including reasonable fees and costs to Plaintiffs' attorneys, accountants, and experts; and

(h) Granting such further relief as the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury.

Dated: November 12, 2025

**SCHUBERT JONCKHEER & KOLBE LLP**

*/s/ Dustin L. Schubert*
Robert C. Schubert (S.B.N. 62684)
Willem F. Jonckheer (S.B.N. 178748)
Dustin L. Schubert (S.B.N. 254876)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
E-mail: rschubert@sjk.law
wjonkcheer@sjk.law
dschubert@sjk.law

*Counsel for Plaintiffs Damon Wells and Jennifer Konikowski*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220